IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * |
| | *     CRIMINAL NO. JKB-07-0149 |
| STANFORD STANSBURY, | * |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM AND ORDER

On October 17, 2007, Stanford[1] Stansbury pled guilty to Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, Cocaine, and Heroin (Count One) and Murder as a Result of Possession and Discharge of Firearms in Furtherance of a Drug Trafficking Crime (Count Seven). (*See* ECF Nos. 36, 223-2.) He was sentenced to 236 months' imprisonment, with five years of supervised release. (ECF No. 223-3.) Presently pending before the Court is Stansbury's Motion for Compassionate Release and Motion for Modification of Term of Imprisonment, which seeks a sentence reduction under Section 404 of the First Step Act. (ECF Nos. 211, 212.) In his Motions, Stansbury seeks a reduction of his sentence to time served and a reduction of his term of supervised release. For the following reasons, Stansbury's Motions will be denied.

### I. *Compassionate Release*

Motions for compassionate release are governed by 18 U.S.C. § 3582(c)(1)(A). Under this section, a district court may modify a convicted defendant's sentence when "extraordinary and

---

[1] The Court notes that Stansbury has used both this spelling and a different spelling of his first name in recent filings. (*See, e.g.*, ECF No. 211 (using the spelling "Standford"; ECF No. 216 (using the spelling "Stanford").) For continuity purposes, the Court uses the spelling that is currently on the docket in this Memorandum and Order.

compelling reasons warrant such a reduction" and the court has "consider[ed] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). A defendant may move for compassionate release under § 3582(c)(1)(A) only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [after] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* Stansbury submitted an electronic request to the warden on August 16, 2021 requesting compassionate release. (ECF No. 211-1 at 1; ECF No. 211-2.) Therefore, the Court must determine: (1) whether Stansbury has provided evidence establishing the existence of "extraordinary and compelling reasons" for his release; and (2) if so, whether compassionate release is consistent with the factors set forth in 18 U.S.C. § 3553(a). The Court finds that he has not established extraordinary and compelling reasons for his release and, even if he had, that compassionate release is not consistent with the factors set forth in § 3553(a).

### A. *Extraordinary and Compelling Reasons*

Under 28 U.S.C. § 994(t), the U.S. Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." The Commission has stated that "extraordinary and compelling reasons" exist where: (1) a defendant has a terminal or serious medical condition; (2) a defendant with deteriorating health is at least 65 years old and has served ten years or 75% of his term of imprisonment; (3) certain family circumstances arise in which a defendant must serve as a caregiver for minor children or a partner; or (4) the Bureau of Prisons ("BOP") determines other circumstances create "extraordinary and compelling reasons" for sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)–(D).

This mandate and policy statement, however, predate the passage of the First Step Act of

2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), which "remove[d] the Bureau of Prisons from its former role as a gatekeeper over compassionate release motions." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020) (internal quotation marks and citation omitted). Accordingly, this Court has held that "medical conditions which make a defendant uniquely susceptible to complications from COVID-19 create 'extraordinary and compelling reasons' to grant compassionate release pursuant to § 3582(c)(1)(A)." *United States v. Richardson*, Crim. No. JKB-09-0288, 2020 WL 3267989, at *2 (D. Md. June 17, 2020); *see also United States v. Lewin*, Crim. No. SAG-15-198, 2020 WL 3469516, at *3 (D. Md. June 25, 2020) (A defendant can establish extraordinary and compelling reasons by demonstrating that he "(1) has a condition that compellingly elevates his risk of becoming seriously ill, or dying, from COVID-19, and (2) is more likely to contract COVID-19 in his particular institution than if released.").

Stansbury argues that he has established extraordinary and compelling reasons justifying his release because his medical condition—which Stansbury characterizes as undiagnosed hypertension—makes him particularly vulnerable to COVID-19. (ECF No. 211-1 at 1–2.) Unlike several other conditions, which the CDC has indicated can increase an individual's risk of severe illness, the CDC has indicated that hypertension "possibly" can increase an individual's risk of severe illness. *COVID-19: People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The Court finds that Stansbury's possible hypertension does not constitute an extraordinary and compelling reason for judicial relief. *See United States v. Hicks*, Crim. No. JKB-18-252, 2021 WL 100802, at *2 (D. Md. Jan. 12, 2021) (concluding that defendant's self-reported asthma and hypertension did not constitute extraordinary and compelling reasons for judicial relief despite the presence of COVID-19 at defendant's facility); *United States v. Hall*,

3

Crim. No. JKB-04-323, 2020 WL 4582712, at *2 (D. Md. Aug. 10, 2020) (concluding that defendant's hypertension and prediabetes diagnoses did not constitute extraordinary and compelling reasons for judicial relief and noting the low COVID-19 incidence at defendant's facility).

Further, the availability of vaccines weighs against finding that Stansbury's medical condition constitutes an extraordinary and compelling reason justifying his release. *See United States v. Sanders*, Crim. No. SAG-06-087, 2021 WL 1428546, at *3 (D. Md. Apr. 15, 2021) ("This Court agrees with the vast majority of other courts who have ruled, on the basis of present understanding, that the highly effective available vaccines dramatically affect whether an inmate's medical conditions constitute the 'extraordinary and compelling reason' required to further consider compassionate release."). As the Government points out, Stansbury has been vaccinated against COVID-19, (ECF No. 223 at 22; ECF No. 223-6), which significantly reduces his risk of becoming seriously ill. *See Sanders*, 2021 WL 1428546, at *3 ("Clearly, there can be no bright-line rule that a vaccinated individual is no longer at compellingly elevated risk, but in most instances, the risk of complications is dramatically reduced."); *see also United States v. Collins*, Crim. No. EKD-17-0033, 2021 WL 4991588, at *3 (W.D. Va. Oct. 27, 2021) ("For the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release.") (citations omitted). This leads the Court to find that extraordinary and compelling reasons for release do not exist at this time.

### *B. Section 3553(a) Factors*

Moreover, even if Stansbury had identified an extraordinary and compelling reason justifying his release, the Court concludes that the § 3553(a) factors do not support a reduction of

4

Stansbury's sentence.

The Court finds that the length of Stansbury's sentence, relative to the nature and seriousness of his offenses; the need to provide just punishment and deter crime; and the applicable Guideline sentencing range weigh against a reduction of his sentence. In particular, Stansbury pled guilty to two serious offenses: Murder as a Result of Possession and Discharge of Firearms in Furtherance of a Drug Trafficking Crime and Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, Cocaine, and Heroin. (*See* ECF No. 223-2.) The facts outlined in the Plea Agreement and Presentence Report ("PSR") are troubling, and reflect that Stansbury was involved in several murders and shootings. (*Id.*; PSR at 2–4.)

The seriousness of Stansbury's offense conduct is also reflected by his Guidelines sentencing range. *See* 18 U.S.C. § 3553(a)(4)(A) (requiring sentencing court to consider "the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines"). Both of Stansbury's offenses of conviction carried a base offense level of 43, based on either a direct or cross-reference to the offense-level guideline for First Degree Murder. (*See* PSR at 5 (explaining that the base offense level of 43 for Count One is based on a cross-reference to U.S.S.G. §2A1.1 and that the base offense level of 43 for Count Seven is found in U.S.S.G. §2A1.1).) Stansbury received a three-level reduction in offense level for his acceptance of responsibility, resulting in a final offense level of 40. (*Id.* at 6.) When combined with his Criminal History Category of III, the Guidelines sentencing range for Stansbury's case was 360 months to life imprisonment. (*Id.* at 8–9.) Stansbury's present sentence of 236 months' imprisonment is already significantly below the Guidelines range. The Court also notes that Stansbury's sentence is significantly shorter than those of his two co-defendants who

received sentences of 480 months and 720 months. (ECF Nos. 168, 170.)

While the Court is heartened to see that Stansbury has earned his GED and has completed several courses while incarcerated, these facts do not outweigh the above-discussed considerations or lead the Court to conclude that Stansbury should receive a shorter sentence.

## *II.    Section 404 of the First Step Act*

Stansbury also moves for a reduction of his sentence pursuant to Section 404. (ECF No. 212.) The Government did not respond to this argument in its briefing. "The First Step Act provides that a sentencing court 'may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed.'" *United States v. Wirsing*, 943 F.3d 175, 180 (4th Cir. 2019) (quoting First Step Act § 404(b), 132 Stat. at 5222). A "covered offense is a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 [and] that was committed before August 3, 2010." *Id.* Once a court determines that there is a covered offense, "[t]o determine the sentence that the court would have imposed under the Fair Sentencing Act, the court must engage in a brief analysis that involves the recalculation of the Sentencing Guidelines in light of intervening case law . . . and a brief reconsideration of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Lancaster*, 997 F.3d 171, 175 (4th Cir. 2021) (internal citations and quotations omitted).

The penalties for Count One (Conspiracy to Distribute and Possess with Intent to Distribute Cocaine base, Cocaine, and Heroin) are found in 21 U.S.C. § 841(b). The statutory penalty for Count One is found in 21 U.S.C. § 841(b)(1)(A) which, at the time of Stanbury's sentencing provided a mandatory minimum of 10 years for the following drug quantities: 1 kilogram of

heroin, 5 kilograms of cocaine, and 50 grams of more of cocaine base. Today, however, the necessary amount of cocaine base required to trigger § 841(b)(1)(A) is 280 grams. Because the statutory penalties for Count One were modified by the Fair Sentencing Act, Count One is a covered offense for purposes of the Act.[2] *See United States v. Jones*, Crim. No. JKB-96-00399, 2020 WL 886694, at *2 (D. Md. Feb. 24, 2020) (citing *Wirsing*, 943 F.3d at 185–86 ("[I]n determining whether an offense was 'covered,' courts should look to the statute of conviction—specifically whether the statutory penalties for that offense were modified by the Fair Sentencing Act—rather than to the conduct (or drug quantities) underlying the conviction.")).

However, the remainder of the Section 404 analysis does not warrant a reduction in Stansbury's sentence. *See Wirsing*, 943 F.3d at 180 ("Congress left the decision as to whether to grant a sentence reduction [under Section 404] to the district court's discretion."). As noted, the base offense level for Count One of 43 was not based on the drug type or quantity, but rather on a cross reference to U.S.S.G. §2A1.1 due to the presence of victims murdered in furtherance of the conspiracy.[3] (PSR at 5.) Thus, the final offense level remains 40 (taking into account the three-point downward departure for acceptance of responsibility) and the Guidelines range for

---

[2] The Court notes that there is some ambiguity regarding Stansbury's offense of conviction that may affect whether it is a covered offense under Section 404 of the First Step Act. Stansbury plead guilty to Count One (Conspiracy to Distribute and Possess with Intent to Distribute Cocaine base, Cocaine, and Heroin), but the Plea Agreement indicates that the "elements of the offense to which the Defendant has agreed to plead guilty, and which the Government would prove if the case went to trial" included that "the Defendant did knowingly and willfully conspire and agree with others to distribute and possess with intent to distribute five kilograms or more of cocaine" with no reference to cocaine base or heroin. (ECF No. 223-2 at 1.) However, the parties' factual stipulations provide that "[t]he Defendants and other members of the organization sold at least 50 kilograms of cocaine, 10 kilograms of heroin, and over 500 grams of crack cocaine." (*Id.* at 5.) It is not clear whether this ambiguity was resolved at sentencing, as Stansbury's sentence was not based on the drug quantities underlying the offense, but rather on a cross-reference to U.S.S.G. §2A1.1 due to the presence of victims murdered in furtherance of the conspiracy. Because the Court concludes that a sentence reduction under Section 404 would not be appropriate even if Count One were a covered offense, it will not resolve this ambiguity, but rather will assume, *arguendo*, that Count One is a covered offense.

[3] This cross-reference does not affect whether Count One is a covered offense. See *United States v. Williams*, Crim. No. CCB-07-402, 2021 WL 3725435, at *3 (D. Md. Aug. 23, 2021) ("[C]ourts in this district have, under Section 404 of the First Step Act, reduced the life sentences of defendants who . . . were sentenced pursuant to the U.S.S.G. § 2A1.1 cross-reference for murder.").

Stansbury's offense today would still be 360 months to life. Thus, a recalculation of Stansbury's sentence "in light of intervening case law" does not provide grounds for a sentence reduction. *Lancaster*, 997 F.3d at 175. Further, as discussed above, the Court concludes that the § 3553(a) factors do not favor a reduction in Stansbury's sentence. *See supra* Part I.B. The Court therefore finds that a reduction in Stansbury's sentence pursuant to Section 404 is not appropriate.

### III.   Conclusion

For the foregoing reasons, Stansbury's Motion for Compassionate Release (ECF No. 211) and Motion for Modification of Term of Imprisonment (ECF No. 212) are DENIED.

DATED this 20 day of April, 2022.

BY THE COURT:

/s/ James K. Bredar
James K. Bredar
Chief Judge